**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RONALD L. CONAWAY,

       Petitioner,

v.                                                        Case No. 8:13-cv-3260-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

Petitioner Ronald L. Conaway, a state of Florida prisoner proceeding *pro se*, filed

a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his

convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida,

in 2007.  Respondent filed a response (Dkt. 11), which raises no challenge to the petition's

timeliness.  Conaway filed a reply (Dkt. 15).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

A jury convicted Conaway of robbery with a firearm, false imprisonment with a

firearm, and three counts of aggravated assault with a firearm.   (Dkt. 12, Ex. 3, Verdict

Form.)  He was sentenced to life imprisonment for robbery with a firearm, fifteen years in

prison for false imprisonment with a firearm, and five years in prison for each count of

aggravated assault with a firearm.  (Dkt. 12, Ex. 3, Judgment and Sentence.)  The state

appellate court *per curiam* affirmed his convictions and sentences.  (Dkt. 12, Ex. 7.)

Conaway filed a motion for postconviction relief under Florida Rule of Criminal

Procedure 3.850.  (Dkt. 12, Ex. 9.)  The court summarily denied some claims and granted an evidentiary hearing on one claim.  (Dkt. 12, Exs. 10, 13.)  Following the evidentiary hearing, the state court entered a final order denying Conaway's postconviction motion. (Dkt. 12, Ex. 14.)  The state appellate court *per curiam* affirmed the order of denial.  (Dkt. 12, Ex. 21.)

## FACTS[1]

Ulysses "Jim" Valladares worked as the manager at the apartment complex where he lived.  He handled evictions and collected rent.  On the evening of November 6, 2006, he was sitting on the porch outside his apartment with his friend Darrell Marvicsin when Conaway joined them.   Valladares' daughters Sara and Seleste planned to arrive to celebrate his birthday that night.

After his daughters arrived with their children and Valladares said goodbye to Marvicsin and Conaway, Conaway pulled out a gun and said no one was leaving. Conaway made statements indicating he was upset about his job and the eviction of his friend from the apartment complex.  He also made comments about getting even and "pay back." He waved the gun around and pointed it at the others.   Sara, Seleste, and their children got into a car.  Still holding the gun, Conaway stood near the car.  He eventually agreed to let them leave but told them that if they called police, he would shoot Valladares, Marvicsin, and any police officer that arrived.  Sara and Seleste left with their children.

At some point, Conaway fired two shots from the gun.  Apparently responding to a police call from an unknown person reporting the gunshots, Sergeant Christopher Gilbert

---

[1] This factual summary is derived from the trial transcript and Conaway's appellate brief.

arrived at the apartment.  Worried about Conaway's earlier statement that he would shoot any officers who arrived, Valladares denied hearing any gunshots.  Gilbert left the scene.

When Sara and Seleste returned to check on Valladares, Conaway again pointed the gun at them, and kicked Seleste's car.  The two women left.  According to Valladares, Conaway went inside Valladares' apartment with Valladares and Marvicsin.  Conaway said he needed money and, because Conaway was armed, Valladares provided him with $41 from his wallet.  Conaway also took a bag containing about $800 in rent money Valladares had collected.  Valladares described his belief that he could not leave the apartment and that he was held there against his will because Conaway was armed.  Conaway remained in the apartment for hours, leaving at some point the next morning. When Conaway opened the door to the apartment, Valladares pushed him out and locked the door behind him. Marvicsin later left the apartment.

Upon his arrest, Conaway told Detective Kenneth Powers that "Darrell" brought the gun to Valladares' apartment and that Valladares discharged the gun.  Conaway stated that he held the gun but denied discharging it or threatening anyone with it.   At trial, Conaway called Dr. Henry Dee.  Dr. Dee testified to his conclusion that Conaway was insane at the time of the offenses.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court

review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed Conaway's convictions and sentences and the denial of his postconviction motion in *per curiam* decisions without written opinions. These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99

("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.  Conaway bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those

claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).   The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Conaway must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.");

*Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Ground One

Conaway argues that the trial court erred in denying his motion for a continuance during trial to locate Marvicsin for the purpose of calling him as a witness.  He claims that the court violated his Fourteenth Amendment due process right to present a complete defense and his Sixth Amendment right to present witnesses.  Conaway asserts that Marvicsin's testimony would have resulted in acquittals on the robbery and false imprisonment charges.

The State charged Conaway with aggravated assault of Marvicsin (count two) and false imprisonment of Marvicsin (count six).  (Dkt. 12, Ex. 1.)  During the State's case, after calling two witnesses, the prosecutor announced that the State would not call Marvicsin:

[COUNSEL]: You are not calling Mr. Marvicsin?

[STATE]: No, he is one that I'm not going to call to testify.  Last I heard is Mr. Marvicsin was in North Dakota tending to an ill child.  And he is not going to testify.

[COUNSEL]: Judge, that is going to cause problems for the Defense.  If I would have known that I would have called Mr. Marvicsin as a witness because his testimony contradicts a lot of what - -

THE COURT: Is he under subpoena?

[COUNSEL]:  - - what Mr. Valladares is going to testify to.

THE COURT: Is he under subpoena?

[COUNSEL]: I did not place him under subpoena because he is actually a listed victim to two of the charges.  I would just naturally assume the State would call the victim to two charges.

Page 11 of  28

[STATE]: I have tried, Judge, but he is in North Dakota and we have lost contact with him.  So, um, I contemplated trying to prove assault through other witnesses but based upon what's happening so far this morning, I was going to announce a nole pross process as to the Marvicsin counts.

. . .

[COUNSEL]: Just for the record I want it noted I think Mr. Marvicsin's departure from the trial is going to prejudice Mr. Conaway in that, if I had known the State would not be calling him I would have tried to track him down myself to get him in here because in deposition his story contradicts Mr. Valladares' as to what happened in that apartment after those girls left.

(Dkt. 12, Ex. 24, Vol. II, pp. 193-94.)

The prosecutor further explained that the State supplemented discovery with Marvicsin's last known address in Ohio, but that "we lost track of him in Ohio, and learned he is in North Dakota." (*Id.*, p. 195.)  At the conclusion of the State's case, the prosecutor announced a *nolle prosequi* of counts two and six.  (Dkt. 12, Ex. 24, Vol. III, p. 281.)  After the trial court denied counsel's request to enter into evidence Marvicsin's deposition, counsel moved for a continuance to locate Marvicsin:

[COUNSEL]: [ ] As I stated yesterday we did not know until yesterday that Mr. Marvicsin who was actually listed as one of the victims to two of the Counts was not going to be called by the State Attorney's Office, therefore - - and we knew he was out of State.  We did not make any arrangements to have him brought down because we assumed the State was doing that.  So, at this point in time the Defense would move for a continuance of the trial in order to find Mr. Marvicsin and bring him in so that we could have him testify as a witness for our case, um, in regards to the State of Florida versus Mr. Conaway, especially since your Honor denied our Motion to allow the deposition to be read in.

(*Id.*, pp. 319-20.)  The court denied this request.  (*Id.*, p. 321.)  Conaway argues that prejudice "is evident by" the jury's question during deliberations asking whether there was any written or recorded statement of Marvicsin regarding the alleged robbery. (Dkt. 1, pp.

6-7.)[2]

Conaway has not exhausted a federal claim.  He raised no argument alleging a federal constitutional violation when he presented this ground of trial court error on appeal. (Dkt. 12, Ex. 5.)  A petitioner can exhaust a federal claim by, "for example, including . . . the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one]."  *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (quotation marks and citation omitted).  The petitioner must make clear he is raising a federal claim in state court; merely "scatter[ing] some makeshift needles in the haystack of the state court record" is insufficient to exhaust a federal claim.  *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).

Conaway cited *Ostolaza v. State*, 943 So.2d 1001 (Fla. 2d DCA 2006) as the sole case in his appellate brief.  Although the appellant in *Ostolaza* raised a Sixth Amendment claim in the state trial court, the appellate court's decision was not based on federal grounds.  The single reference to a Sixth Amendment claim in *Ostolaza* was insufficient to raise a federal argument in Conaway's appeal.  State procedural rules do not provide for successive direct appeals.  *See* Fla. R. App. P. 9.140.  Consequently, Conaway's unexhausted federal claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  He does not establish the exceptions of either the cause and prejudice or fundamental miscarriage of justice to overcome the default.

Notwithstanding the default, Conaway does not show entitlement to relief.  The Sixth Amendment right to compulsory process to obtain witnesses is "well established" and

---

[2] The court informed the jury that they heard all the evidence that was to be presented.  (Dkt. 12, Ex. 24, Vol. IV, p. 486.)

applies to state proceedings.  *Dickerson v. Alabama*, 667 F.2d 1364, 1369 (11th Cir. 1982).

As further explained in *Washington v. Texas*, 388 U.S. 14, 19 (1967):

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

A court's denial of a continuance to obtain a witness may violate a defendant's right to compulsory process if a "reasonable continuance" has been sought "for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense."  *Dickerson*, 667 F.2d at 1370.   In determining whether a denial of continuance violates the right to compulsory process, courts consider several factors:

> (T)he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Id.* (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. 1981)).  "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process."  *Hicks*, 633 F.2d at 1148.

The record reflects that counsel took Marvicsin's deposition but did not subpoena him for trial.  There is no indication that Marvicsin's testimony could be procured within a reasonable time.  The State "lost track" of Marvicsin in Ohio and he was believed to be in

North Dakota. However, the record does not reflect that anyone knew his exact whereabouts in North Dakota or his contact information. Additionally, while counsel told the court that Marvicsin's deposition testimony contradicted Valladares' version of events, she did not specify how it did so or how it would be favorable to Conaway. Therefore, Conaway has not shown that the trial court's rejection of his motion for continuance was an abuse of discretion so arbitrary and fundamentally unfair that it violated due process. He does not establish that the trial court's denial of his motion for continuance violated his constitutional rights to compulsory process and to present a defense. Ground One warrants no relief.

**Ground Two**

Conaway argues that counsel was ineffective for failing to move to perpetuate Marvicsin's deposition testimony under Florida Rule of Criminal Procedure 3.190(j). In support, he asserts that Marvicsin was a 70-year old man in poor health and "[t]he chances were that he may not live to see trial." (Dkt. 1, p. 7.) He asserts that counsel should have taken this action when alerted to Marvicsin's new address in Ohio. Conaway argues that there is a reasonable probability that "Marvicsin's depo testimony perpetuated at trial would have changed the outcome of the robbery and false imprisonment convictions to not guilty." (*Id.*)

Conaway raised this argument in claim 1 of his postconviction motion, in which he also alleged that counsel was ineffective for not calling Marvicsin to testify at trial. The state court summarily denied his claim:

> [A]s to claim 1, the State argues the Defendant has failed to meet the requirements for such a claim as outlined in <u>Nelson v. State</u>, 875 So.2d 579 (Fla. 2004); namely that Darrell Marvicsin was available for trial and,

therefore, the Defendant is unable "to establish deficient performance or prejudice from counsel's failure to call" him. . . . The Court agrees. Accordingly, **claim 1 is DENIED**.

(Dkt. 12, Ex. 13, p. 209.)

Rule 3.190(j), Fla. R. Crim. P. (2007) states that either party may seek an order to perpetuate testimony upon affidavit that a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending a trial or hearing; that the witness's testimony is material; and that it is necessary to take the deposition to prevent a failure of justice.

The court and parties discussed introducing Marvicsin's deposition.  The court did not allow this, however, because the deposition was not taken pursuant to Rule 3.190:

> The [Florida] Supreme Court in Rodriguez[3] has spoken on the use of depositions and specifically differentiated the use of a deposition in a civil proceeding from a criminal proceeding.  And has specifically stated that it was their intent that the rule 3.190 J was enacted to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case.  Therefore since the earlier deposition was not taken pursuant to Florida Rule of Criminal Procedure 3.190 J to perpetuate testimony, that in accordance with the ruling in Rodriguez, the deposition is inadmissible.

(Dkt. 12, Ex. 24, Vol. III, pp. 295-96.)

Conaway does not show that counsel was ineffective for failing to move to perpetuate Marvicsin's testimony.  Counsel's performance must be viewed at the time of the alleged error or omission. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

3 *Rodriguez v. State*, 609 So.2d 493 (Fla. 1993).

perspective at the time." *Strickland*, 466 U.S. at 689.  Marvicsin was listed as the sole victim in two of the counts.  Although the State updated Marvicsin's address to reflect his Ohio residence, it was not until after the start of trial that the State informed the defense it could not contact Marvicsin[4] and thus did not intend to call him, and announced a *nolle prosequi* of these counts.  Counsel stated that she was unaware Marvicsin would not be called to testify, and had presumed the State would call him.  Conaway does not demonstrate that this was an unreasonable conclusion under the circumstances.

Additionally, his claim that counsel should have moved to perpetuate Marvicsin's testimony because he was in poor health and might not survive until trial is unsubstantiated and conclusory.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).[5]  Conaway has not established deficient performance by counsel.

---

[4] During argument on whether to allow Marvicsin's deposition into evidence, the State explained:

Judge, we have lost contact with him and the address we had, the 997 Ramsey Drive in Mansfield, Ohio, an address we provided to the Defense awhile back when he first learned that Mr. Marvicsin had left the area.  I have the exact date, Judge.  The second day of August is when we learned he had moved to Ramsey, Ohio, the drive there.  Our efforts to get ahold of him in light of the fact that he is out of our jurisdiction, we sent him a certified letter and have a certified receipt, it was certified but no return service on that letter and have not received any phone calls from him.

(Dkt. 12, Ex. 24, Vol. III, pp. 294-95.)

[5] The deposition transcript indicates that counsel did not have reason to believe that, as Conaway claims, Marvicsin was in poor health:

Q.  How old are you, Mr. Marvicsin?

A.  I'll be 70 next month.

Q.  You look good for 70.

A.  Thank you.  I feel pretty good too.

(continued...)

Nor does Conaway demonstrate prejudice as a result of counsel's actions. He argues that Marvicsin's testimony would have changed the outcome of trial on the counts of robbery and false imprisonment, for which Valladares was listed as the victim. However, he has not shown a reasonable probability that Marvicsin's perpetuated testimony would have prevented his conviction on these counts. In his deposition, Marvicsin stated that he did not see Conaway take money from Valladares. (Dkt. 12, Ex. 23, p. 203.) He also testified that he was outside on the porch for a time while Valladares and Conaway were inside the apartment. (*Id.*, pp. 197, 203.) This indicates that Marvicsin had no personal knowledge about the robbery of Valladares, but does not necessarily mean that Marvicsin could testify the robbery did not occur. Additionally, no part of Marvicsin's deposition testimony shows that Conaway did not commit false imprisonment of Valladares. Marvicsin testified that Conaway threatened Valladares with a gun and that he "took Jim inside with that gun." (*Id.*, p. 197.)[6]

Accordingly, Conaway does not establish that counsel was ineffective for failing to move to perpetuate Marvicsin's testimony before trial or that he suffered any prejudice as a result of counsel's actions.[7] He has not shown that the state court's decision was

---

[5](...continued)
(Dkt. 12, Ex. 23, pp. 205-06.) Conaway points to no specific record information showing that counsel knew or should have known that Marvicsin was not in good health.

[6] "The term 'false imprisonment' means forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will." § 787.02(1)(a), Fla. Stat.

[7] In its analysis of Conaway's claim, the state court did not expressly discuss Conaway's argument that counsel was ineffective for failing to move to perpetuate Marvicsin's testimony, as opposed to failing to call him as a witness at trial. Nevertheless, this claim is presumed to be denied on the merits. *See Richter*, 562 U.S. at 99. *De novo* review is appropriate when a state court fails to address the merits of a claim presented in a habeas petition because 'the present controversy falls outside of § 2254(d)(1)'s requirement
(continued...)

contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts.  Conaway is not entitled to relief on Ground Two.

**Ground Three**

Conaway claims that counsel was ineffective for failing to impeach Valladares with his prior inconsistent statements to law enforcement.  He claims that "Valladares gave two different versions of how many people were robbed, 3 different versions of how much money was taken, and two different versions of who was present when the alleged robbery took place." (Dkt. 1, p. 10.)  He asserts Valladares' credibility would have been called into question had counsel impeached Valladares with his inconsistent statements.

Conaway does not in his federal habeas petition identify specific instances in the record where Valladares allegedly provided testimony inconsistent with his earlier statements to law enforcement.  Therefore, the Court interprets this claim as raising the same allegation Conaway brought in claim 2 of his postconviction motion.  In that claim, Conaway first argued that counsel was ineffective for failing to impeach Valladares with his prior inconsistent statement concerning how much money Conaway took and from whom he took the money.  Specifically, he asserted that Valladares told Detective Powers that Conaway took a total of $75 directly from Valladares and Marvicsin, and that this sum consisted of $40 taken from Valladares and $35 taken from Marvicsin.  (Dkt. 12, Ex. 9, pp.

---

[7](...continued)
that [the federal court] defer to state court decisions that are not contrary to, or an unreasonable application of, clearly established federal law." *Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003).  Even assuming *de novo* review applies, however, Conaway is not entitled to relief.  For the reasons addressed, Conaway has not established either that counsel performed deficiently by not moving to perpetuate Marvicsin's testimony or that he suffered prejudice as a result of counsel's conduct.

32-34, 56.)  Valladares testified at trial that Conaway took $41 from him.  (Dkt. 12, Ex. 24,

Vol. II, p. 224.)  He did not testify that money was taken from Marvicsin.

Second, Conaway argued that Valladares made inconsistent statements concerning

who was present during the robbery.  Conaway points to a police incident report indicating

that Valladares told law enforcement the "theft occurred while Conaway was in the

apartment and no one else was close."  (Dkt. 12, Ex. 9, p. 121.)  Conaway states this was

inconsistent with the following portions of Valladares' trial testimony indicating Marvicsin

was present during the robbery:

> Q.  So [your daughters] leave a second time, do you and Darrell eventually
> make your way with the Defendant into your apartment[?]
>
> A.  Oh, yes, we did.
>
> Q.  How does that happen, walk us through it?
>
> A.  Um, finally I just said come on, they're gone.  Let's party.  I wanted to get
> him inside the apartment and try to take that firearm away from him because
> he still had it on Darrell and I.  He had his way with us the whole night.

(Dkt. 12, Ex. 24, Vol. II, p. 222.)

> Q.  Okay.  Um, during the night from the moment you got into your apartment
> until you push him in the back out and shut that door and get your gun, what
> is Darrell doing there, during this time?
>
> A.  He was sitting there.  He is an old man, 70 something, an old man, a
> good man.

(*Id.*, pp. 228-29.)

The state court summarily denied this claim:

> As to claim 2, the State argues: "While it is unlikely that counsel could
> be considered deficient [for the reasons alleged], even if the Court could
> make that finding, defendant cannot show the likelihood of prejudice" to the
> extent that, but for such error, "there is a reasonable probability that the
> outcome [of the proceedings] would have been different." Motion at 13, *citing*

> Ridenour v. State, 768 So. 2d 480, 481 (Fla. 2d DCA 2000).  The Court
> agrees.  Accordingly, **claim 2 is DENIED**.

(Dkt. 12, Ex. 13, p. 209.)

Conaway does not show that he was prejudiced by counsel's performance.  The inconsistency in whether $40 or $41 was taken from Valladares is minor.  Moreover, despite this minor discrepancy, the crux of Valladares' testimony supporting the taking element[8] of the robbery charge–that Conaway took money from him and took the bag containing rent money–was not inconsistent with his prior statements.  Additionally, while Valladares did not testify that Conaway took money from Marvicsin, he was not asked about this on direct examination, and the charging document did not list Marvicsin as a victim of the robbery.  (Dkt. 12, Ex. 1; Ex. 24, Vol. II, p. 224.)  Therefore, Conaway does not show a reasonable probability that the outcome of trial would have been different had counsel cross-examined Valladares about his prior statements concerning the amount of money taken or the number of people robbed.

Additionally, Conaway has not demonstrated that Valladares gave inconsistent statements about how many people were present during the robbery by allegedly telling police that the "theft occurred while Conaway was in the apartment and no one else was close" but testifying at trial that Marvicsin was also present in the apartment during the events.  The statement that "no one else was close" is vague and unclear.  It does not exclude the possibility that Marvicsin was inside the apartment but was not near Valladares or the bag.  Conaway does not demonstrate a reasonable probability that the outcome of

---

[8] Robbery "means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."  § 812.13(1), Fla. Stat.

trial would have been different had counsel cross-examined Valladares in the manner Conaway suggests.

Accordingly, Conaway does not show that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Consequently, he is not entitled to relief on Ground Three.

**Ground Four**

Conaway argues that counsel was ineffective for interfering with his right to testify at trial by incorrectly advising him that the specific nature of his prior offenses would be presented if he testified.  He alleges that "[c]ounsel told Petitioner that if he testified the jury would find out that he had been in prison for two counts of attempted 2nd degree murder" and that "[r]elying on counsel's misadvice, Petitioner involuntarily waived his right to testify at trial."  (Dkt. 1, p. 12.)[9]

The state court granted an evidentiary hearing on this claim, after which it denied Conaway's argument:

> Claim 4 of the Defendant's Motion was the subject of the evidentiary hearing held on December 3, 2009.  In Claim 4 of his Motion, the Defendant alleges that his trial counsel was ineffective for misinforming him that if he testified at trial the jury would learn the "specific nature of his prior convictions" and not just the number, "which compelled the Defendant in

---

[9] *Johnson v. State*, 923 So. 2d 541, 543 (Fla. 3d DCA 2006), provides:

Under section 90.610, Florida Statutes (2001), a party may attack the credibility of a witness by introducing evidence of a prior felony conviction. The general rule for impeachment by prior convictions is that the State is restricted to asking a witness if he or she has previously been convicted of a crime, and if so, the number of times.  *Fotopoulos v. State*, 608 So.2d 784 (Fla. 1992).  An exception exists, however, when the witness attempts to mislead the jury about his prior convictions. In those circumstances, the State is entitled to inquire further about the prior convictions to dispel any false impression that may have been given. *McCrae v. State*, 395 So.2d 1145 (Fla. 1980).

court colloquy to involuntarily waive his right to testify."

The Defendant testified at the evidentiary hearing that his attorney told him that the specific nature of his previous charges would come out if he testified. The State asked the Defendant about the trial court's discussion with him about testifying, and the Defendant acknowledged that the trial court did not tell him that the specific nature of his offenses would come out if he testified. The Defendant also testified that he obtained prescription drugs at the jail which had not been prescribed to him, and he took them during the trial. He alleges that this caused him to be confused and scared at the trial. At the evidentiary hearing, the defense argued that the taking of these drugs and the Defendant's confusion had a connection to claim 4 of the Defendant's Motion.

At the evidentiary hearing, the Defendant's trial counsel . . . testified that she leaves the decision of whether or not to testify in the hands of her clients. She testified that she discusses the benefits and non-benefits of testifying with all of her clients. The State asked [counsel] what she tells her clients with regard to prior offenses: She testified that; " I tell them that if they testify that the State can ask them have they ever been convicted of a felony or a crime of dishonesty and then they can be asked how many times." [Counsel] testified that she has never told a client that the specific nature of the convictions would come in if they testified. [Counsel] testified that she did not have the feeling that her client didn't understand her at trial or that he looked confused.

The Court finds that the Defendant's testimony is not credible that his attorney told him that the specific nature of his offenses would come out if he testified. The Court found [counsel's] testimony regarding what she tells her clients about testifying to be credible. The Court particularly finds credible [counsel's] testimony that she does not tell her clients that the specific nature of their offenses will come out if they testify. The court finds that the Defendant's testimony regarding the unprescribed medications he took and his confusion during the trial has little or no connection to claim 4 of his Motion. The Court notes that the Defendant testified at the evidentiary hearing that he did not tell anyone that he was taking these unprescribed drugs during the trial or that he was confused. The Defendant has not shown that Counsel's performance fell below an objective standard of reasonableness with respect to claim 4 of his Motion.

In addition, to the extent it might be argued that there was deficient performance by counsel, the Court does not find there is any reasonable probability that the result of the proceedings would have been different but for such deficiencies. To some extent, the Defendant's testimony regarding what he would have said had he testified at the trial reflected information

already presented to the jury at the trial when his law enforcement interview was played for the jury. His testimony at the evidentiary hearing regarding what he would have told the jury does not support a reasonabl[e] probability that the result of the proceedings would have been different had he testified at the trial. Claim 4 of the Defendant's Motion is denied.

(Dkt. 12, Ex. 14, pp. 269-70.)

Upon reviewing the evidentiary hearing testimony, the state court found credible counsel's testimony that she does not inform clients the specific nature of their offenses will be presented if they testify.[10]  A federal habeas court must defer to factual findings of the state court. 28 U.S.C. § 2254(e)(1). Conaway does not overcome the presumption of correctness afforded to the state court's determination that counsel's testimony was credible. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].")*; Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). *See also Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) ("A certain amount of deference is always given to a trial court's credibility determinations.  That the case is before us on habeas review heightens that deference.") (citations omitted).

Conaway has not demonstrated that counsel was ineffective for the reason alleged. He fails to establish that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable

---

[10] Counsel testified that she does not tell her clients that the specific nature of their prior convictions will be addressed.  (Dkt. 12, Ex. 25, p. 253.)  She further testified that, with respect to prior convictions, she tells her clients to "just answer those questions" and that "if you say something more than that then the State could possibly get into the circumstances surrounding those convictions."  (*Id.*)

Page 24 of  28

determination of the facts.  Consequently, Ground Four warrants no relief.

**Ground Five**

Conaway asserts that counsel was ineffective for failing to object when the prosecutor improperly advanced a golden rule argument during closing arguments.  He claims that the prosecutor "improperly asked the jury to place themselves in the victims' position and relive what the victims experienced."  (Dkt. 1, p. 14.)

The prosecutor made the following statements during closing arguments:

You heard from the two sisters and the dad and from the law enforcement officers that basically came after the fact and did law enforcement stuff.  But [the] heart of the State's case were the two sisters and the dad, the powerful and compelling testimony that came from this witness stand.  The emotion, the raw emotion as they relived what happened to them a year and a day ago.

(Dkt. 12, Ex. 24, Vol. III, pp. 411-12.)

In arguing that the State's witnesses were credible, the prosecutor further stated:

Some things you should consider are did the witness seem to have an opportunity to see and know the things about which the witness testified?  You recall how Sara when she was reliving it she was real emotional.  When she would get to certain parts she just about couldn't talk.  When I asked her to point out the person who did it she just about could not do it.  Is that not proof of this young lady reliving what took place a year ago, as well as her sister who was a little bit less emotional and the dad?  Think about the times in his testimony when he put on the big tough exterior, you know protected my daughters, the dad role, but did you see when he was talking about his kids and not being able to protect them or do anything because Conaway had the gun, did you see how emotional he got?  Was that acting?  Was that like a soap opera actor who can turn on the tears because it is time to turn on the tears?  Or was that genuine raw emotion of someone who was reliving what took place, a terrible episode in your life a day and a year ago?

(Dkt. 12, Ex. 24, Vol. IV, pp. 414-15.)

The state court denied Conaway's claim of ineffective assistance of counsel:

In response to Claim 5, that Defendant's counsel was ineffective for

failing to object when the prosecutor, during closing arguments, "advanced the Golden Rule argument", after reviewing the closing arguments of the State the Court disagrees with Defendant's contention that the State's closing arguments were "an advancement of the Golden Rule argument." When read in their entire and proper context, the State's comments and arguments were neither improper nor legally objectionable. *See* trial transcript at 412-16, copies of which are attached. *See also* Miller v. State, 926 So.2d 1243, 1254-1255 (Fla. 2006)("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."); and Brown v. State, 787 So.2d 229, 230 (Fla. 2d DCA 2001), *citing* Caraballo v. State, 762 So.2d 542, 547 (Fla. 5th DCA 2000)("[F]undamental error occurs in closing when the 'prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury'.") Accordingly, **claim 5 is DENIED**.

(Dkt. 12, Ex. 10, p. 124.)

The record supports the denial of this claim. Golden rule arguments "are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." *Braddy v. State*, 111 So.3d 810, 842 (Fla. 2012) (quoting *Mosley v. State*, 46 So.3d 510, 520 (Fla. 2009)). Here, the prosecutor's remarks concerned the witnesses' credibility. He argued that the witnesses' emotional conditions indicated their recollections were credible. No part of the prosecutor's remarks suggested that the jurors place themselves in the victims' positions and imagine what they experienced. Accordingly, Conaway has not demonstrated that counsel was ineffective for failing to object to the identified statements as improper golden rule arguments. He fails to show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Ground Five warrants no relief.

**Ground Six**

Conaway contends that counsel's cumulative errors and omissions constitute ineffective assistance of counsel. Conaway raised this allegation in claim 6 of his postconviction motion. The state court denied this claim prior to the evidentiary hearing, when it had denied all but one of Conaway's postconviction claims. (Dkt. 12, Ex. 13, p. 210.) Because Conaway has not demonstrated any meritorious ineffective assistance of counsel claims, his claim of cumulative error must also fail. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (when none of individual claims of error or prejudice have merit, "we have nothing to accumulate."). Conaway does not show that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Six.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is therefore

**ORDERED** that Conaway's petition for writ of habeas corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Conaway and to close this case.

It is further **ORDERED** that Conaway is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Conaway "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Conaway has not made this showing.  Finally, because Conaway is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 20, 2017.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copy to:
Ronald L. Conaway
Counsel of Record